UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
JUL 29 2009
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

GARY B. DAVIS and
SUSAN DAVIS

    Debtors.
_____/

Case No. 6:08-bk-07588-ABB
Chapter 7

CYNTHIA KUBLI,

    Plaintiff,

vs.

GARY B. DAVIS and SUSAN DAVIS,

    Defendants.
_____/

Adv. Pro. No. 6:08-ap-00221-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint Objecting to Discharge of Debtors (Doc. No. 1) ("Complaint") filed by Cynthia Kubli, the *pro se* Plaintiff herein ("Plaintiff"), against Gary B. Davis ("Mr. Davis") and Susan Davis ("Mrs. Davis"), the Debtors and Defendants herein (collectively, the "Debtors"). The Plaintiff requests an unsecured debt of $130,000.00 be determined nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The Complaint references 11 U.S.C. Sections 727(a) and 523(a)(2)(A). The Plaintiff has not pled, pursued or established a Section 727(a) cause of action against the Debtors. This matter is a Section 523(a)(2)(A) cause of action.

A final evidentiary hearing was held on June 15, 2009 at which the Debtors, their counsel, and the Plaintiff appeared. Judgment is due to be entered in favor of the Debtors and against the Plaintiff for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Background*

The Debtors filed the above-captioned Chapter 7 case on August 29, 2008. They reside at 102 Shadow Lake Drive, Longwood, Florida, which is their homestead ("Homestead"). They own a second home located at 1191 Wekiva Springs Road Drive, Longwood, Florida ("Wekiva Property"), which is adjacent to or nearby their Homestead. Their adult daughter and a roommate reside in the Wekiva Property.

The Homestead is encumbered by a mortgage held by Countrywide Home Loans and the Wekiva Property is encumbered by first and second mortgages. The Debtor's Schedules reflect the properties have no equity. Countrywide has been granted relief from the automatic stay.

Mr. Davis has been employed by Fidelity National Information Services for twenty-two years as an application programmer relating to bank loans. Mrs. Davis is the lead analyst for the loan department of FISERV, where she has been employed for fourteen years. The Debtors have a total of thirty-six years of experience in the banking industry.

The Plaintiff is employed by FISERV as a software installer for banks and has worked with Mrs. Davis for more than twenty years. She and Mrs. Davis routinely

travelled together for work-related projects and became friends. They continue to work together at FISERV.

The Debtors have combined average monthly net income of $10,958.28, which includes their salaries and monthly rental income of $1,300.00 from the Wekiva Property. They have 401(k) retirement plans through their employers against which they have taken loans. The 401(k) loan repayments are deducted from their paychecks.

The Debtors owned a condominium located at 2684 Brandon Circle, Apopka, Florida ("Brandon Circle Property"), which they sold prepetition to a third party.

### *Transactions with Plaintiff*

The Debtors list the Plaintiff as a creditor in Schedule F for a joint debt of $130,000.00 described as a "personal loan." The debt arises from two transfers made by the Plaintiff to the Debtors in 2006: (i) a $90,000.00 transfer; and (ii) a $40,000.00 transfer (collectively, "the loan"). The loan, despite the parties' expertise in lending practices, was not documented. All communications regarding the loan, its purpose, and the parties' intentions were verbal.

The Plaintiff contends the debt of $130,000.00 is nondischargeable on the basis she was fraudulently induced to loan the funds to the Debtors. She named Mr. Davis as a defendant, but made no allegations against him. The Plaintiff's allegations of fraudulent inducement are directed solely towards Mrs. Davis.

The Plaintiff and Mrs. Davis presented conflicting and indistinct accounts of how the loan arose, how the funds were to be used, repayment terms, the parties' intentions, and why the Debtors ceased making interest payments to the Plaintiff. The Plaintiff's testimony was the more comprehensible of the two accounts.

The Wekiva Property came on the market in 2006 and Mrs. Davis discussed with the Plaintiff in May 2006 the Debtors' desire to purchase it for their daughter, who was living in the Brandon Circle Property. Mrs. Davis stated they needed a loan for the purchase and she could take a loan from her 401(k) retirement plan or obtain a loan from a third party.

The Plaintiff agreed to lend the Debtors funds to purchase the Wekiva Property. The Plaintiff drew $90,000.00 from her home equity line of credit and transferred the funds to the Debtors on May 26, 2006. The withdrawal reduced the equity in the Plaintiff's home and incurred interest charges on the line of credit. The Plaintiff, one week later, transferred $40,000.00 to the Debtors, which funds were provided by the Plaintiff's sister.

The Plaintiff induced her sister to provide the $40,000.00 by representing to her the Plaintiff and Mrs. Davis intended use the funds to purchase a condominium as an investment property. The Plaintiff admitted she "misled" her sister and her sister would not have provided the funds had she known they were to be used for the purchase of the Wekiva Property. The Plaintiff did not explain what repayment obligations, if any, she may have to her sister relating to the $40,000.00.

Mrs. Davis promised to pay the interest accruing on the Plaintiff's home equity line of credit. She promised she would repay the Plaintiff the loan principal of $130,000.00 within one year through the sale of the Brandon Circle Property or, alternatively, from her 401(k) retirement plan if the Brandon Circle Property did not sell.

Mrs. Davis represented to the Plaintiff the Brandon Circle Property had a value of approximately $208,000.00 with equity of approximately $90,000.00 after deduction of

the mortgage balances of $82,000.00. The Brandon Circle Property was not listed for sale nor had the Debtors engaged a broker to sell the property when the Plaintiff made the loan to the Debtors. The Debtors placed the property with a broker in July 2006.

The Debtors purchased the Wekiva Property on or about July 21, 2006 using $122,000.00 of the Plaintiff's loan for the down payment. The balance of $8,000.00 was used to repair the Wekiva Property. The remainder of the purchase price was financed through a loan of $339,000.00 from SunTrust Mortgage secured by a first priority mortgage.

The Debtors subsequently obtained a loan of $29,000.00 from Joel Cutter, which is secured by a second priority mortgage on the Wekiva Property. The first and second monthly mortgage payments on the Wekiva Property total approximately $2,936.71. The Debtors' daughter pays monthly rent of $1,300.00 for the Wekiva Property.

There were discussions between Mrs. Davis and the Plaintiff in July 2006 regarding the Plaintiff purchasing the Brandon Circle Property. It appears the parties intended to collateralize the Plaintiff's loan through her purchase of the Brandon Circle Property. They discussed a purchase price of $199,900.00. Their discussions and any agreements or understandings between the parties were not documented.

The Plaintiff's son conducted an informal appraisal of the property and appraised it at $199,000.00. The purchase of the Brandon Circle Property by the Plaintiff did not materialize. The Debtors sold the Brandon Circle Property to a third party in July 2007 for approximately $172,000.00 and netted $11,000.00. The Debtors retained the sale proceeds.

The Debtors made no payments of loan principal to the Plaintiff. The only payments the Debtors made to the Plaintiff were interest payments in May 2006 through September 2006. The Debtors sent a check for $886.35 to the Plaintiff in October 2006, which was returned for insufficient funds. The Plaintiff attempted to discuss the returned check with the Debtors. The Debtors returned from a Hawaii vacation in late January 2007 and informed the Plaintiff they would not repay the loan. Communications ceased between the parties. The Debtors did not issue a replacement check and made no further payments to the Plaintiff.

This dispute emanates from an undocumented loan between two friends. The Plaintiff, motivated by friendship, loaned the Debtors $130,000.00 at great personal expense. Mrs. Davis acknowledged the Debtors owe the Plaintiff $130,000.00 and they had an obligation to repay the Plaintiff the loan principal plus the interest accruing on the Plaintiff's home equity line of credit. The Debtors either could not or would not continue making interest payments to the Plaintiff. They made no payments of loan principal to the Plaintiff and used available funds for other expenses.

The Debtors did not fulfill their payment obligations to the Plaintiff. Failure to pay an unsecured debt is not the equivalent of fraud. The Debtors, as reflected in their bankruptcy papers and Mrs. Davis' testimony, have made a series of poor financial decisions resulting in unpaid unsecured debts of $211,607.00, including the Plaintiff's loan.

The Plaintiff has not established the debt of $130,000.00, or any portion of it, was incurred by the Debtors through false pretenses or fraud. The Debtors represented they needed a loan to purchase the Wekiva Property. The Plaintiff agreed to loan them

$130,000.00 and the Debtors used the loan for the purchase and repair of the Wekiva Property. Mrs. Davis represented the Debtors would make interest payments on the loan and repay the principal from the sale of the Brandon Circle Property or from her 401(k) retirement plan.

The Debtors intended to perform those promises at the time the loan was made. They started making interest payments shortly after the loan was made. The relationship deteriorated and the Debtors breached their payment promises. A breach of a repayment promise does not constitute fraud.

The Plaintiff did not establish by a preponderance of the evidence the Debtors made a false representation intended to deceive her upon which the Plaintiff justifiably relied and sustained a resulting loss. The indebtedness owed by the Debtors to the Plaintiff is dischargeable and due to be discharged.

The Debtors requested in their Answer (Doc. No. 4) an award of fees and costs pursuant to Federal Rule of Civil Procedure 9011 and U.S.C. Section 523(d). The Debtors have established no basis for an award of fees or costs. Their request is due to be denied.

## CONCLUSIONS OF LAW

The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Exceptions to discharge "should be strictly construed against the creditor and liberally in favor of the debtor." Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

The Plaintiff contends the debt of $130,000.00 should be excepted from discharge pursuant to 11 U.S.C. Section 523(a)(2)(A), which provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

The Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998). She must establish: (i) the Debtor made a false representation to deceive the Plaintiff; (ii) the Plaintiff relied on the misrepresentation; (iii) the reliance was justified; and (iv) the Plaintiff sustained a loss as a result of the misrepresentation. Id. at 1281; Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). She must establish each of the four elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995).

The reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995) (establishing Section 523(a)(2)(A) requires justifiable

reliance rather than the former standard of reasonable reliance); In re Vann, 67 F.3d at 283-84 (adopting "justifiable reliance" as the applicable standard of reliance). A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

The Plaintiff did not establish the Debtors made any false representations with the intent to deceive her at the time the loan was made in May 2006. The loan transaction between the Plaintiff and the Debtors arose through verbal promises. The Debtors truthfully represented to the Plaintiff they needed a loan to purchase the Wekiva Property. They used the $130,000.00 for the Wekiva property, with the majority of the funds used for the down payment and the remainder for repairs.

Mrs. Davis promised the Debtors would pay the interest accruing on the Debtor's home equity line of credit and she promised they would repay the loan principal through the sale of the Brandon Circle Property. The Debtors intended to fulfill those promises at the time the loan was made as evidenced by the interest payments they made and their placing the Brandon Circle Property with a broker in July 2006. The Debtors later breached their payment promises.

The Plaintiff, by failing to establish the first nondischargeability element, failed to establish the second, third, and fourth elements. The Plaintiff has not established the debt of $130,000.00, or any portion of it, is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). The indebtedness owed by the Debtors to the Plaintiff is dischargeable.

The Debtors requested in their Answer (Doc. No. 4) an award of fees and costs pursuant to Federal Rule of Civil Procedure 9011 and U.S.C. Section 523(d). The

Debtors have established no basis for an award of fees or costs pursuant to Rule 9011 or 11 U.S.C. Section 523(d). Their request is due to be denied.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the Complaint is hereby construed as a complaint seeking the nondischargeability of a debt based on fraud pursuant to 11 U.S.C. Section 523(a)(2)(A) and all allegations and causes of action not related to Section 523(a)(2)(A) are hereby **DISMISSED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the Debtors' Request for an award of fees and costs (Doc. No. 4) is hereby **DENIED**.

A separate Judgment in favor of the Debtors and against the Plaintiff consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 29TH day of July, 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge